[Civ. No. 33047.   Second Dist., Div. Three.   Apr. 30, 1969.]

PEARL R. GERA, Plaintiff and Appellant, v. RENO M. GERA, Defendant and Respondent.

494

Richards, Watson & Hemmerling and Glenn R. Watson for Plaintiff and Appellant.

Sprague & Clements and Morgan S. Ralls, Jr., for Defendant and Respondent.

SHINN, J.*—Mrs. Gera, who was awarded a divorce in a contested action, appeals from the judgment except as it awards her a divorce. Mrs. Gera alleged in her complaint that there was community property consisting of an automobile, a bank account, and money in the control of defendant, the amount of which was unknown to her. She also alleged that the household furniture and the real property which was her home were her sole and separate property. Mr. Gera filed a cross-complaint for divorce alleging that the automobile, a bank account, and the household furniture were community property, and the residential real property was held in joint tenancy. Each party accused the other of cruelty, and each sought an award of the community property. The real property was declared to be owned in joint tenancy, and the furniture was awarded to Mrs. Gera.

Mrs. Gera owned the home of the value of $20,000 when she married Mr. Gera in 1955. At or about that time she signed and acknowledged a deed placing the title in joint tenancy with Mr. Gera. She testified she had no intention to convey any present interest in the property to Mr. Gera; intended only to protect him in case of her death; and that the deed was retained in her possession and was never delivered. Mr. Gera testified that he was given possession of the deed; that he and Mrs. Gera went to the recorder's office together and had the deed recorded. The court believed the dubious testimony of Mr. Gera and found that the deed was duly

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

executed and delivered. This finding must be deemed conclusive, and it supports the judgment that the property is owned in joint tenancy.

After submission of the trial the judge pro tem entered a minute order stating his decision that Mrs. Gera was entitled to a divorce on the ground of cruelty; Mr. Gera to take nothing by his cross-complaint; and that the joint tenancy deed was duly executed and delivered. Mrs. Gera's attorney was directed to prepare findings and conclusions unless waived by counsel for Mr. Gera. The minute order was made February 28, 1967. On March 24, 1967, before findings and conclusions were made, Mrs. Gera's attorney gave notice of motions to reopen the trial for the receipt of new evidence and for leave to file a supplemental complaint. The hearing was noticed for April 4, 1967. The principal grounds of the motions were that on March 22d Mrs. Gera had declared a homestead on the property for the benefit of herself and her husband, the homestead gave her special rights in the property that should be adjudicated in the divorce action, and that upon evidence she proposed to introduce the court could and should assign the homestead to her for life. The motions were heard and denied.

Pertinent parts of the homestead laws are sections 146, subdivision (e),[1] 1262, 1263, and section 1300[2] of the Civil Code.

In denying the motions the court stated as its reasons that in the trial there was no evidence of a homestead; the court had decided the facts of the case and rendered its decision and ". . . it is just the technicality of having you prepare the findings of fact, and then you file the homestead, I think the purpose of filing a homestead is so that the Court could make an assignment and this is your position . . . I would not make an assignment to the wife on a homestead that has

[1] "If a homestead has been selected from the separate property of either, in cases in which the decree is rendered upon any ground other than incurable insanity, it shall be assigned to the former owner of such property, subject to the power of the court to assign it for a limited period to the party to whom the divorce or decree of separate maintenance is granted, and in cases where the decree is rendered upon the ground of incurable insanity, it shall be assigned to the former owner of such property, subject to the power of the court to assign it to the party against whom the divorce or decree of separate maintenance is granted for a term of years not to exceed the life of such party."

[2] "Following the entry of a decree of separate maintenance or an interlocutory decree of divorce, each spouse may execute and acknowledge in the same manner as a grant of real property is acknowledged, a declaration of a married person's separate homestead from the separate property of the spouse so declaring same, or from any property awarded to such spouse by said decree."

been filed after the Court has made its full decision. . . .''
The court again requested counsel to prepare findings and
conclusions, and this was done in due course. The court sub-
sequently denied the motion of Mrs. Gera for a new trial.

Declarations filed with the motions stated that Mrs. Gera
was 71 years old, she had worked for years as a practical
nurse and had purchased the home from her earnings but had
become seriously incapacitated; her income was small and
made it necessary for her to occupy the home in order to
subsist upon her income.

If these facts had been proved in the trial the court in the
exercise of its discretion could properly have awarded the
homestead to Mrs. Gera for life. We do not imply that it was
required to do so. The court held that it had, in effect, entered
an interlocutory decree of divorce and that under section 1300
Mrs. Gera could not have a homestead in the joint tenancy
property. Due to the error of holding section 1300 applicable
Mrs. Gera was denied a day in court to which she is clearly
entitled.

Without doubt the judgment must be reversed for a deter-
mination of the rights of the parties arising out of the declar-
ation of the homestead. ■ A declaration of a homestead
validly declared, creates interests in real property which are
fixed by law. There are special provisions respecting home-
stead rights in the event of a divorce. The court may by its
judgment delare rights of the spouses that would not other-
wise exist. The parties have a right to a determination of
those rights when they are properly before the court for adju-
dication in a divorce action. A party cannot be denied that
right unless it has been forfeited through failure to protect
and assert it. All this is elementary under our legal system.

Respondent Mr. Gera says Mrs. Gera forfeited the right to
assert special homestead rights in the trial and he argues: she
could have declared the homestead prior to the trial and
pleaded her claim to have the homestead assigned to her for
life; she waited to file a homestead until she learned that the
court intended to declare the property was owned in joint
tenancy; she had no right to two chances; the court properly
exercised its discretion in denying her motions. Mr. Gera
relies upon the rule that an order denying a motion to re-open
the trial or to file a supplemental complaint will be affirmed
on appeal unless it is shown to be an abuse of discretion.
■ The rule applicable here is that an order will be reversed if
it amounts to an abuse of discretion and that an order cannot

stand if it is clearly obnoxious to settled principles of law and clearly prejudicial.

Mrs. Gera did not forfeit her right to assert her homestead rights and claims in the divorce action. This was shown by her own declaration and the declaration of her attorney, Mr. Watson, in support of his motions. Mr. Watson declared that after being informed by Mrs. Gera as to her intentions in signing the joint tenancy deed, upon her assurance to him that the deed had been kept among her private papers and had never been delivered to Mr. Gera, her assurance that she had learned of the recording of the deed only during the litigation, the statements of Mr. Gera in his deposition, and the fact that Mr. Gera's contribution to the refinancing of the property had been very small in proportion to the contribution of Mrs. Gera, he formed the opinion that the court would surely find either that the property belonged solely to Mrs. Gera or that it was community property which would be assigned to her. He believed that the declaration of a homestead would be detrimental to the interests of his client. After reading the testimony of Mrs. Gera and of Mr. Gera upon all matters considered by Mr. Watson we do not hesitate to say that we regard his opinion as reasonable and justifiable. He advised Mrs. Gera to declare a homestead on the property because he believed it should be assigned to her for life. He made the motions to enable the court to make a determination of her rights.

The denial of the motions was not the exercise of judicial discretion. It was based upon egregious misconceptions of applicable law. Findings of the facts and conclusions of law directed to be prepared are not, as the judge said, "just the technicality of having you prepare the findings of fact." The minute entry was not the formal recorded decision of the factual issues that the law requires. And the court misconceived the rights created by homesteads saying it did not believe that "the homestead was filed to protect these two parties from any creditors which the purpose of the homestead is. . . ." The motions were denied because of the court's ex parte determination that if they were granted the homestead would not and could not be assigned to Mrs. Gera.

While the deprivation of the rights of Mrs. Gera requires a reversal of the judgment there is another feature of the case which appeals strongly to our sense of justice. Mr. Watson, through the advice he gave his client, became personally involved. In deciding upon what course to follow in the

trial he had to speculate upon what the court's decision would be concerning the real property. He believed the odds were strongly in favor of a decision that the property was the separate property of Mrs. Gera but if found to be community property that it would be awarded to her. He relied upon what he considered to be the probabilities, and he made a mistake in misjudging the improbabilities. It was an excusable mistake. He should have been given every reasonable opportunity to protect his client from any harmful consequences of the mistake. *An attorney has as much right and duty to correct his mistakes as a judge has the very considerable right and duty to grant a new trial for his own errors.* In the circumstances of the case the denial of the motions of Mrs. Gera was not only an erroneous deprivation of her right to a full and fair trial but it unfortunately left Mr. Watson with the depressing realization that his client had suffered from his mistake of judgment. He will be given an opportunity to file the supplemental complaint, copy of which is attached to the notice of motions, and his client will be accorded a full hearing whatever the result may be.

The judgment is reversed with directions to permit the filing of the proposed supplemental complaint, to permit the defendant to answer the same and to try the issues arising out of the declaration of the homestead; no costs of appeal to either party.

Ford, P. J., and Schweitzer, J., concurred.